## BAUM et al. v. DALLMAN.

### No. 871.

District Court, S. D. Illinois, S. D.

Feb. 24, 1948.

---

Acton, Acton, Baldwin & Bookwalter, Bookwalter, Carter & Gunn, and H. Gunn, all of Danville, Ill., and Mark O. Roberts, Resident Atty., of Springfield, Ill., for plaintiffs.

Theron Lamar Caudle, Asst. Atty., Gen., and Andrew D. Sharpe and Lyle M. Turner, Sp. Assts. to the Atty. Gen., Howard L. Doyle, U. S. Atty., and Marks Alexander, Asst. U. S. Atty., both of Springfield, Ill., for defendants.

ADAIR, District Judge.

I find the facts to be:

1. The defendant V. Y. Dallman is and at all times mentioned in the complaint filed in this cause was the duly qualified and acting Collector of Internal Revenue for the United States of America, in and for the Eighth District in the State of Illinois.

2. The defendant on December 13, 1946, in his official capacity, notified plaintiffs C. M. Baum, Nora H. Baum, Kathryn J. Jones, Helen Smith, and Glen T. Smith that the Internal Revenue Agent in charge had made a determination of the income and declared value excess-profits tax liability of the Baum Packing Company, a corporation, of Danville, Illinois, for the taxable year ended July 26, 1943, and determined that there was a deficiency of $28,-514.56 income tax, and accrued interest thereon of .$5,373.63 and a deficiency of $14,438.98 declared value excess-profits tax, and accrued interest of $2,721.05 making an aggregate amount of $51,048.22 which the said Agent had determined was due from Baum Packing Company, a Corporation, of Danville, Illinois, for the taxable year ending July 26, 1943, and the said Agent had determined that said tax aforesaid was due and payable by the plaintiffs as transferees of said corporation, and said defendant, as Collector aforesaid, demanded payment of said sum of $51,048.22 to be made by the plaintiffs to the defendant within 10 days from December 13, 1946.

3. Said assessment and determination of said tax and demand for payment of said amount from the plaintiffs to the defendant was made solely by reason of a sale of certain assets by C. M. Baum, as an individual, to Rose Packing Company, which assets had belonged to said corporation prior to the dissolution and liquidation thereof, and said demand was made of the plaintiffs and said payment required from them by the defendant on the theory that said sale was made by the corporation and not by C. M. Baum, and that the plaintiffs were liable for said tax as transferee of the assets of said corporation.

4. In pursuance of said demand and request from the defendant, the plaintiffs did, on December 24, 1946, pay to the defendant, as Collector of Internal Revenue aforesaid, under protest, said sum of $51,-048.22, which said amount was received by the defendant from the plaintiffs under protest.

5. Plaintiffs thereafter, on January 9, 1947, presented a claim in writing to the Commissioner of Internal Revenue of the United States, on Form No. 843, prepared by the Treasury Department, for a refund of said sum of $51,048.22, and that said claim was duly verified by the plaintiffs, and said claim for refund was duly filed with the defendant, as Collector of Internal Revenue aforesaid, in all respects as required by the rules and regulations of the Treasury Department of the United States, and that more than 6 months expired prior to the filing of the Complaint in this cause, and the Commissioner had rendered no decision thereon, and that a copy of said claim as filed aforesaid is attached to the complaint in this cause, marked

"Exhibit A", to which reference is hereby made.

6. The sale of said certain assets to the Rose Packing Company, mentioned in paragraph 3 above, was made by virtue of a contract in writing on November 20, 1942, which has been introduced in evidence, and was made by C. M. Baum individually, in behalf of himself and his associates, viz., his wife, Nora H. Baum, his daughters, Kathryn J. Jones and Helen Smith, and his son-in-law, Glen T. Smith, and the contract, itself, provided that it was complete and binding upon C. M. Baum without the signatures of any associates.

7. At the time of the making of said contract C. M. Baum was the principal stockholder and, with his wife and the members of his family above mentioned, owned much more than two-thirds of all the issued stock of said Baum Packing Company, and the minority interest was owned by a few friends of C. M. Baum.

8. C. M. Baum was and had been for many years an extensive farmer and dealer in cattle and was the owner of farm lands in Vermilion County, Illinois, and in western Indiana, and had a stock ranch in the State of Colorado; and about two months or more before November 20, 1942, had decided to get out of the packing business and talked with his auditor and tax consultant, who was a certified public accountant, and said auditor and tax consultant advised him that if a sale of the assets was made by the corporation that it would involve a tax liability to the corporation, but if the corporation was dissolved and the assets conveyed by the corporation to the shareholders as a liquidating dividend, and then if the shareholders sold the assets received as a liquidating dividend, that there would be no tax liability to the corporation but the tax liability would be upon the shareholders.

9. A few weeks thereafter, C. M. Baum mentioned the fact of his desire to get out of the packing business to a broker in Chicago, and thereafter representatives of the Rose Packing Company came to Danville, Illinois, and looked over the plant of the Baum Packing Company and indicated their interest in purchasing the plant, and C. M. Baum informed them that he was willing to sell the controlling stock in the corporation.

10. On November 19, 1942, C. M. Baum and his attorney had a conference with a representative of the Rose Packing Company and its attorney, at Chicago, Illinois, and negotiations were carried on between said parties, the result of which was that C. M. Baum again informed the prospective purchaser that he controlled more than two-thirds of the stock of said corporation and was willing to make a sale to them of that stock, which would give the purchaser the control of the corporation, and the prospective purchaser because of advice by the attorney of the Rose Packing Company, that it would be unable to get a Certificate of Necessity that would permit it to take the depreciation then being allowed to a purchaser of new assets to be used in the war effort, and primarily for that reason, was unwilling to purchase the shares of stock of the Baum Packing Company.

11. Thereupon, the auditor and tax consultant of C. M. Baum was called at Danville, Illinois, and he went to Chicago and participated in negotiations carried on on November 20, 1942, which resulted in C. M. Baum making the individual contract for the sale of certain assets to the Rose Packing Company, which assets then belonged to the Baum Packing Company.

12. At no time during the entire negotiations was ever any proposition made to the Baum Packing Company as a corporation, or considered by its Board of Directors; neither did the corporation make or receive any offer or proposition from the Rose Packing Company, but, on the contrary, C. M. Baum informed the prospective purchaser that he was not willing that the corporation make a sale of any of its assets to the prospective purchaser, but that he was willing to sell certain of the assets to the prospective purchaser as an individual and assume the responsibility for making delivery.

13. Thereupon C. M. Baum purchased all the shares of stock of the corporation that were outstanding, except those held by himself and the members of his family, as above stated, and on November 24, 1942, all the shareholders filed a written consent to the dissolution of the corporation and a meeting of the Board of Directors was held on said day and a formal statement of intent to dissolve the corporation was filed with the Secretary of State, as provided by law, and a copy of the same filed with the Recorder of Deeds in Vermilion County, Illinois; and afterwards, on November 28, 1942, by formal action of the corporation's Board of Directors all the assets of said corporation were conveyed to the shareholders by proper bill of sale and deed of conveyance of said real estate, in final liquidation of the corporation; and thereafter, on the same day, C. M. Baum and the other shareholders conveyed by bill of sale and deed, to the Rose Packing Company, the assets that C. M. Baum had previously individually agreed to convey to it.

14. The Baum Packing Company, a corporation, made no sale of any assets whatsoever, as claimed by the Government as the basis for the assessment of said Income Tax and Declared Value Excess-Profits Tax of said Corporation, and the purchase price was never paid to said corporation, but, on the contrary, the original installment of the purchase price and the subsequent payments made thereon were made and deposited in a special account opened up in a bank at Danville, Illinois, in the name of C. M. Baum, as a special account in behalf of himself and the members of his family who were his associates.

15. There was no sham, artifice or fraud in the transactions, but C. M. Baum, openly and aboveboard, and with knowledge of the purchaser, refused to submit the purchaser's offer to buy the assets to the corporation, and, with the knowledge of the purchaser, entered into a personal and individual contract with the purchaser.

16. Plaintiffs, as individuals, filed their respective Income Tax Returns for the year 1943, and in said Returns each plaintiff included in his or her individual Return their respective share of the profits of the sale of said assets by C. M. Baum to the Rose Packing Company, and each of the plaintiffs paid their share of the tax due thereon.

17. The sale of said assets to the Rose Packing Company was not made by the Baum Packing Company, a corporation, but was made by C. M. Baum as an individual, and there was no taxable gain to said corporation.

18. The plaintiff Baum, with his immediate family, was the owner of a majority of the stock of said corporation. Upon the refusal of the buyer to purchase the stock of said corporation, he refused to sell the assets as corporation property but insisted upon selling such assets individually or as stockholders' property. He and his family then proceeded to dissolve the corporation and the stockholders accepted the assets as their individual property. He had already entered into contract to deliver said assets to the purchaser. Upon such transfer from the corporation to the stockholders said property was delivered and the purchase price paid in accordance with said contract; all of which was in accordance with the laws of the State of Illinois, and for the sole purpose of avoiding corporation taxes.

Conclusions of Law.

I conclude as to the law as follows:

1. The Court has jurisdiction of the subject matter and of the parties to this suit.

2. There is no right to assess an income tax against a corporation where the sales of the assets are made by the shareholders of a corporation and not by the corporation itself.

3. If the sale of the assets in question was made by C. M. Baum as an individual and not by the corporation of which he was a principal stockholder, then the fact, if it be a fact, that the sole motive of C. M. Baum in making the sale in-

414

dividually and refusing to let the sale be made by the corporation would not make any taxable gain to the corporation. The legal right of a taxpayer to decrease the amount of what would otherwise be his taxes, or altogether to avoid them, by means which the law permits, cannot be doubted.

■ 4. A shareholder in a corporation may validly contract to sell certain assets then owned by the corporation before any steps are taken toward liquidation, if he has a reasonable prospect of obtaining title to them within the time fixed by the contract for the conveyance. This is true of shareholders in a corporaion, as it is of people in general who have a prospect of obtaining title and are willing to assume a personal liability if they should fail.

■■ 5. While the entire negotiations and all circumstances surrounding a sale may be considered in determining the factual question as to whether a sale was made by a corporation, such rule does not permit the Court to make an inference that the corporation made the sale, in the face of positive and uncontradicted testimony of unimpeached witnesses, or make a finding of fact contrary to credible and trustworthy affirmative evidence.

■ 6. The sale in this case by C. M. Baum as an individual to the Rose Packing Company was not a sham but was real, and to hold that said sale was one made by the corporation would be to substitute fiction for reality.

7. The defendant as Collector of Internal Revenue for the United States, for the Eighth District of Illinois, is indebted to the plaintiffs in the amount of $51,048.22, plus interest at the rate of 6% from December 24th, 1946.

8. Judgment should be entered herein in favor of the plaintiffs and against the defendant in the amount of $51,048.22, together with interest at 6% from December 24, 1946, to this date, and the Clerk of this Court is hereby directed to enter said judgment as provided in Rule 58 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.